# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAMONT HALL, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 14 C 7887 |
| COOK COUNTY, DR. EMIL TOTONCHI, GLEN TRAMMELL, and COOK COUNTY HEALTH AND HOSPITALS SYSTEM, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Lamont Hall has sued Cook County, Dr. Emil Totonchi, Glen Trammell, and Cook County Health and Hospitals System (CCHHS). Hall asserts claims under 42 U.S.C. § 1983 for deliberate indifference to a serious medical condition as well as state law claims. Defendants have moved to dismiss Hall's state law claims under Federal Rule of Civil Procedure 12(b)(6). They have also moved to dismiss all claims against CCHHS on the ground that it is a non-suable entity. For the reasons stated below, the Court dismisses all claims against CCHHS but otherwise denies defendants' motion.

## Background

Because defendants have moved to dismiss for failure to state a claim, the Court accepts the facts alleged in Hall's complaint as true and draws reasonable inferences in his favor. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010).

Hall has been detained at the Cook County Jail since October 4, 2013. Prior to

his detention, Hall suffered a gunshot wound to his penis that required immediate surgery. Following Hall's surgery on or about November 18, 2012, the physicians at Presence Saint Francis Hospital installed a Foley catheter in his penis. They counseled Hall on at-home care and follow-up treatment, advising him that he would need a staged urethroplasty to restore full function to his penis and urethra once the Foley catheter was removed. Hall's doctors instructed Hall that once the Foley catheter was removed and before the staged urethroplasty, he should regularly insert a straight catheter into the tip of his penis to prevent stricturing, a condition that would make recovery more difficult and complicated. Hall's staged urethroplasty was scheduled to be performed in March 2013. Hall was arrested on February 5, 2013, before this surgery could be performed.

Hall alleges three major deficiencies in his medical care during his detention at the Jail: infrequently distributed catheter replacements and cleaning supplies, a significant delay in scheduling his staged urethroplasty, and insufficient post-operative care. Hall says that these deficiencies caused him a great deal of physical pain and mental anguish.

Hall contends that he repeatedly requested catheter replacements from defendant Glen Trammell, a physician's assistant, but received less than ten between October 2013 and April 2014. He also alleges that the few catheter replacements he received were provided without the necessary numbing gel. As a result, Hall says, he was forced to insert and reuse the same catheters two or three times a week without the aid of numbing gel, a painful process that made him susceptible to infections. He also alleges he was given only one bar of soap per week. Hall alleges that these practices

placed him in fear of infection, made him the object of ridicule by fellow inmates, and heightened his depression and anxiety.

Hall also alleges that defendants repeatedly delayed his staged urethroplasty. Hall underwent surgery on April 23, 2014, more than six months after he entered the Jail. Hall alleges that defendants ignored his multiple grievances and requests for medical care, failed to follow up on independent specialists' recommendations that he receive the surgery, failed to follow up on internal orders for the surgery, failed to keep accurate records, and failed to take adequate steps to arrange for the surgery. He alleges that this delay caused him ongoing pain, embarrassment, and psychological distress.

Finally, Hall contends that his post-operative care after the staged urethroplasty failed to meet reasonable standards. He says that he was not taken to his follow-up appointment to remove the post-operative Foley catheter and that he had to wait an additional month to see a physician and get it removed. He alleges that during the time the Foley catheter was improperly left in place, he developed an infection that caused him severe pain as well as emotional suffering. Hall was prescribed antibiotics for the infection, but a nurse told him two days after the prescription was issued that it had expired. As a result, Hall experienced further delay in treating his painful infection. He alleges he continues to experience pain from these events through the present time.

**Discussion**

Defendants argue that the Court should dismiss counts 3, 4, 5, and 6 because the medical report required under 735 Ill. Comp. Stat. 5/2-622(a)(1) (2014) is insufficient; should dismiss count 7 on the ground that the defendants are immune from

3

liability for simple negligence under 745 Ill. Comp. Stat 10/4-105 (2014); and should dismiss all counts against CCHHS because it is a non-suable entity. On a motion to dismiss under Rule 12(b)(6), the Court accepts all facts alleged in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *See, e.g., Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**1.      Medical malpractice claims**

An Illinois plaintiff asserting a medical malpractice claim must submit with his complaint an affidavit by the plaintiff or his attorney attesting that he has reviewed the facts of the case with an appropriately qualified health professional who has determined in a written report that there is "reasonable and meritorious cause" for asserting the claim. 735 Ill. Comp. Stat. 5/622(a)(1) (2014). The physician's report must accompany the affidavit. *Id.* It must "clearly identify[ ] the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists." *Id.* Section 2-622 "was enacted to deter non-meritorious litigation. It should not be so strictly construed that exquisite and fine technicalities can be used as a means of stripping plaintiffs of their substantive rights." *Hagood v. O'Conner*, 165 Ill. App. 3d 367, 374, 519 N.E.2d 66, 70 (1988).

Defendants argue that the report submitted in this case is insufficient because it covers all defendants in a single statement. The law does not require a separate report for each defendant. If a single report "is sufficiently broad to cover each defendant, adequately discusses deficiencies in the medical care given by defendants, and establishes that a reasonable and meritorious cause exists for filing the action, the report can be considered sufficient to comply with section 2-622." *Premo v. Falcone*, 197 Ill. App. 3d 625, 632, 554 N.E.2d 1071, 1077 (1990). The report at issue adequately discusses deficiencies in the medical care given by defendants and establishes that a reasonable and meritorious cause exists for filing the action. The Court concludes that the report is "sufficiently broad to cover each defendant."

Defendants further contend that the report is insufficient because it does not refer to physician's assistant Trammell or Dr. Totonchi by name, but rather as "medical professionals" and "physicians associated with Cook County Jail." A failure to name the defendants in a medical report is an inconsequential deficiency if "a review of all the pleadings clearly demonstrates that the report refers to defendants." *Ebbing v. Prentice*, 225 Ill. App. 3d 598, 603, 587 N.E.2d 1115, 1118 (1992). The factual assertions in the report provided by Hall parallel the facts alleged in the complaint. Although the physician's report does not refer to the defendants by name, the actions of each defendant are easily identifiable when the report and the complaint are read together. For these reasons, the report's failure to name the defendants is of no consequence.

Defendants also contend that the report in this case is insufficient because it fails to identify any inappropriate actions by the defendant. For this argument, defendants

rely on *Premo*. *See* Defs.' Mot. to Dismiss at 6. The facts in this case, however, are distinguishable from those in *Premo*. There, the report described particular inappropriate actions by doctors without explaining what the appropriate actions would have been. *See Premo*, 197 Ill. App. 3d at 632, 554 N.E.2d at 1076. In this case, by contrast, the physician's report is critical of defendants' failure to act. It is sufficiently clear from the report that defendants' failure to act is what the reporting physician contends was inappropriate. It is similarly sufficiently clear that the missing conduct is what the reporting physician contends would have been the appropriate action.

Finally, defendants contend that the physician who made the report (Dr. James) is not properly qualified because he specializes in endocrine surgery, not urology. But section 2-622 does not require the reporting physician to have the same specialty as the particular defendant, with certain exceptions that do not apply here. In cases like this one, the report need only be "from a physician licensed to practice medicine in all its branches." *See* 735 Ill. Comp. Stat. 5/2-622(a)(1) (2014). Because Dr. James is "licensed to practice medicine in all its branches," not to mention a surgical research fellow at a major research university and a past chief resident of general surgery at another research institution, he is sufficiently qualified under section 2-622.

For these reasons, the Court finds that Dr, James's report is sufficient and therefore declines to dismiss plaintiffs' professional malpractice claims.

**2.    Count 7**

Defendants move to dismiss Count 7 of Hall's complaint based on section 4-105 of the Tort Immunity Act, which provides that "neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish

6

or obtain medical care for a prisoner in his custody." 745 Ill. Comp. Stat. 10/4-105 (2014). The same statute goes on to state, however, that "this Section shall not apply where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care." *Id.* Hall argues that he has sufficiently alleged willful and wanton conduct by the defendants.

Under Illinois law, conduct is willful and wanton conduct if it is "committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or failure to discover the danger though recklessness or carelessness when it could have been discovered by the exercise of ordinary care." *Bernesak v. Catholic Bishop of Chi.*, 87 Ill. App. 3d 681, 686, 409 N.E.2d 287, 291 (1980). Although Hall does not use the words "willful and wanton" in count 7, his complaint, read liberally, includes the necessary allegations. In particular, Hall incorporates into count 7 all of the allegations he included in count 1, 2, and 4, his section 1983 deliberate indifference claims against the County, Trammell, and Dr. Totonchi. *See* Am. Compl. ¶ 108. Those claims include allegations that the defendants were deliberately indifferent to a serious medical condition. *Id.* ¶¶ 73, 78-79, 91-92. Because the standard for willful and wanton conduct is "remarkably similar to the deliberate indifference standard," *Pittman ex rel. Hamilton v. Cty. of Madison*, 746 F.3d 766, 781 (7th Cir. 2014), Hall's incorporation of his deliberate indifference allegations are sufficient to set forth in count 7 a claim of willful and wanton conduct. Thus defendants are not entitled to dismissal based on the Tort Immunity Act.

### 3. CCHHS

Defendants contend that CCHHS is not a suable entity and should be dismissed from this suit entirely. There is no controlling authority on this point. The Court finds persuasive, however, the district court decisions finding that CCHHS is not a suable entity. *See*, *e.g.*, *Serv. Emps. Int'l Union, Local 73 v. Cook Cty.*, No. 13 C 2935, 2014 WL 793114, at *4 (N.D. Ill. Feb 26, 2014) (Cermak Health Services and CCHHS are not suable entities). The ordinance establishing CCHHS declares that it is an agency of and funded by Cook County. "[Because] it has no legal existence separate and apart from the County of Cook, [CCHHS] cannot be sued." *Payne v. Cook Cty. Hosp.*, 719 F. Supp. 730, 733 (N.D. Ill. 1989). *See also Williams v. Fairman*, No. 94 C 206, 1996 WL 164289, at *2 (N.D. Ill. April 2, 1996) (finding Cermak Health Services to be a non-suable entity because its establishing ordinance declares it to be a "division of Cook County"). The Court therefore dismisses all of Hall's claims against CCHHS is granted.

### Conclusion

For the foregoing reasons, the Court dismisses all claims against defendant Cook County Health and Hospitals System but otherwise denies defendants' motion to dismiss [dkt. no. 35].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 13, 2015